FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 20, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAELA T.,[1]

     Plaintiff,

  v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,[2]

     Defendant.

No. 4:20-cv-5078-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Plaintiff Michaela T. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ erred when evaluating Plaintiff's symptom testimony, the medical opinions, and the listings, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 19, and denies the Commissioner's Motion for Summary Judgment, ECF No. 20.

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] On July 9, 2021, Ms. Kijakazi became the Acting Commissioner of Social Security. She is therefore substituted for Andrew Saul as Defendant. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

## I.    Five-Step Disability Determination

2

A five-step sequential evaluation process is used to determine whether an

3

adult claimant is disabled.[3] Step one assesses whether the claimant is engaged in

4

substantial gainful activity.[4] If the claimant is engaged in substantial gainful

5

activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

6

Step two assesses whether the claimant has a medically severe impairment

7

or combination of impairments that significantly limit the claimant's physical or

8

mental ability to do basic work activities.[7] If the claimant does not, benefits are

9

denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

10

Step three compares the claimant's impairment or combination of

11

impairments to several recognized by the Commissioner as so severe as to preclude

12

substantial gainful activity.[10] If an impairment or combination of impairments

13

14

_____

15

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

16

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

17

[5] *Id.* §§ 404.1520(b), 416.920(b).

18

[6] *Id.* §§ 404.1520(b), 416.920(b).

19

[7] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

20

[8] *Id.* §§ 404.1520(c), 416.920(c).

21

[9] *Id.* §§ 404.1520(c), 416.920(c).

22

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing past work by determining the claimant's residual functional capacity (RFC).[12] If the claimant can perform past work, benefits are denied.[13] If not, the disability evaluation proceeds to step five, which assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[17]

---

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

## II.    Factual and Procedural Summary

Plaintiff filed Title 2 and 16 disability applications.[18] Her claims were denied initially and upon reconsideration.[19] An administrative hearing was held by video before ALJ Jesse Shumway.[20]

When denying Plaintiff's disability claims, the ALJ found:

- Plaintiff met the insured status requirements through June 30, 2017.

- Step one: Plaintiff had not engaged in substantial gainful activity since July 15, 2013, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: obesity and lumbar degenerative disc disease.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except:

  she requires a sit/stand option, at will; she can perform all postural activities only occasionally; and she cannot have concentrated exposure to vibration or hazards (unprotected heights, moving mechanical parts, etc.).

- Step four: Plaintiff was not capable of performing past relevant work.

---

[18] AR 209–27.

[19] AR 140–53.

[20] AR 30–71.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as office helper, mail clerk, and ticket seller.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the examining opinion of Philip Gibson, Ph.D. and the reviewing opinion of Gordon Hale, M.D., and

- little weight to the reviewing opinions of Robert Smiley, M.D., Bruce Eather, Ph.D., and Kristine Harrison, Psy.D.[22]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were inconsistent with the medical evidence and other evidence.[23]

---

[21] AR 12–29.

[22] AR 22. The ALJ stated that he gave "[g]reat weight" to the "State medical consultants' physical opinions." AR 22. However, only Dr. Hale—not Debra Cowan, SDM—was qualified to offer a medical opinion. There is no evidence in the record that Ms. Cowan was qualified to offer a medical opinion. *See* AR 86, 95 (SDM); 20 C.F.R. § 404.1502 (defining who is an acceptable medical source; an SDM, a single decision maker, is not included in this definition).

[23] AR 20–22.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record.[29]

---

[24] AR 1–9.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383,

1
2
3
4

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

### A.    Symptom Reports: Plaintiff establishes consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[33] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific,

---

386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (cleaned up).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[33] *Molina*, 674 F.3d at 1112.

clear and convincing reasons' for the rejection."[34] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.[35] "The clear and convincing standard is the most demanding required in Social Security cases."[36] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[37]

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the

---

[34] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[35] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[36] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[37] *Lingenfelter*, 504 F.3d at 1035.

claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.[38] The ALJ is instructed to "consider all of the evidence in an individual's record" to "determine how symptoms limit ability to perform work-related activities."[39]

At the hearing, Plaintiff testified:

- she has constant pain in her low back with her left side worse than her right side, weakness in her left leg, and some numbness in her left foot and other areas, though her last of four back surgeries helped relieve some of the radiating pain down her left leg.

- she drags her left foot a bit, limps if she is in a lot of pain, avoids bending over, can walk and/or stand for about 30 minutes, and has knee pain if she walks upstairs.

- she has lifting limitations, and bowel and bladder incontinence.

- sitting and standing cause aggravated pain, so she shifts positions often.

- she cries easily, loses interest in doing things, has not done arts and crafts in about four months, has some sensory hallucinations, and has trouble remembering names, dates, and faces.

---

[38] SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).

[39] SSR 16-3p, 2016 WL 1119029, at *2.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

- she has anxiety and trouble sleeping due to chronic nightmares and pain.

- she has more physically "bad days" than "good days," and when she has a good day, she uses that day to get laundry, other chores, and errands done.[40]

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medically determinable impairments inconsistent with the medical evidence and other evidence, including the longitudinal objective medical evidence, her activities, and her weak work history.[41]

### 1.    Objective Medical Evidence

Objective medical evidence is a relevant factor for the ALJ to consider when assessing a claimant's symptoms, however, the ALJ cannot discount symptom reports solely because they are not fully corroborated by the objective medical evidence.[42] "Objective medical evidence" means signs, laboratory findings, or both.[43] In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements

---

[40] AR 47–64

[41] AR 20–22.

[42] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[43] 20 C.F.R. §§ 404.1502(f), 416.902(k).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

(symptoms). Signs must be shown by medically clinical diagnostic techniques.[44]

Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[45] The ALJ can also consider if the symptoms and signs improved with treatment.[46]

Here, the ALJ found Plaintiff's allegations were inconsistent with the unremarkable longitudinal objective medical evidence "outside perioperative periods (i.e., shortly before and after the claimant's two surgeries in November 2016 and June 2017)" and with her treatment, which was "effective for pain."[47] As is discussed below in the Listings section, the ALJ's analysis fails to show that he considered the objective signs in their full diagnostic context.[48] For instance, even

---

[44] *Id.* §§ 404.1502(g), 416.902(l).

[45] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[46] 20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999).

[47] AR 21–22.

[48] *See Ghanim*, 763 F.3d at 1164; *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness . . . , he cannot reach a conclusion

after Plaintiff's fourth lumbar surgery in June 2017, she experienced loss of strength in her left hip, reduced range of motion in her lumbar back, and chronic pain. Although her symptoms waned with physical therapy and spinal injections, substantial evidence reflects that treatment did not effectively treat Plaintiff's pain. By not fully considering the full diagnostic picture, the ALJ erred.

2.    Activities of Daily Living

The ALJ also found that Plaintiff "remained quite active, in contrast to her testimony."[49] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[50] However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."[51] Moreover, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."[52] For these

first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

[49] AR 21.

[50] *Molina*, 674 F.3d at 1113.

[51] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (cleaned up).

[52] *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996).

1    reasons, activities of daily living bear on a claimant's symptom reports only if the

2    level of activity is inconsistent with the individual's claimed limitations.[53]

3         Here, the ALJ highlighted that Plaintiff:

4         • reported on the function report "doing household chores, running

5              errands, working on hobbies, caring for a pet, making her own meals,

6              washing dishes, dusting, doing laundry, taking short walks, going out

7              alone, driving, shopping in stores, managing financial account [sic],

8              doing arts and crafts, and watching movies."

9         • reported to medical providers that "on various occasions that she goes

10             camping, has been very active, is doing very physical 'forging' three

11             times a week, has been caring for a wheelchair-bound father, has

12             been doing a lot of gardening, went on a road trip and camped, and is

13             able to do chores for two hours without resting."[54]

14        The ALJ fails to clearly explain why these activities from the function report

15   are convincingly inconsistent with Plaintiff's reported limitations. In the function

16   report, Plaintiff also mentions that her daily activity level depends on her pain

17   level, and that she only does about 2–3 activities a day before she gets tired or her

18   pain gets too high, and that if she does a hobby, she only does an art or craft project

19

20

21   [53] *Reddick*, 157 F.3d at 722.

22   [54] AR 20–21 (revised to accurately reflect "forging" rather than "foraging").

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1
2
3
4
5
6

for 30 minutes.[55] When Plaintiff's function-report statements are considered in their context, they are consistent with her symptom testimony. Moreover, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."[56]

7
8
9
10
11
12

As to the activities the ALJ highlighted from the medical reports, the ALJ also fails to clearly explain why these activities are convincingly inconsistent with Plaintiff's reported limitations. First, while camping can be a strenuous activity on the body, Plaintiff also reported to her medical providers that the camping trips were physically challenging for her, and several providers noted that Plaintiff was indeed fatigued and physically impacted by the camping trips. [57] Moreover,

13
14
15
16

---

[55] AR 265–72.

17
18
19

[56] *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (Ms. Vertigan could grocery shop without assistance, walk approximately an hour in the malls, play cards, swim, watch television, and read, but these activities did not consume a substantial part of her day and so did not detract from her credibility).

20
21
22
23

[57] AR 457 (Sept. 2015: "appeared to be more fatigued even at beginning of session," following a four-day camping trip); AR 1061–62 (July 2018: fatigued during physical therapy session after returning from several night camping trip); AR 30

Plaintiff's "camping" transitioned to staying in hotel rooms. Thus, the longitudinal record reflects that, while Plaintiff went camping a couple times a year with friends, the camping trips caused Plaintiff lumbar pain, which is consistent with her reports of increased pain with exertion.

The ALJ also highlighted that Plaintiff reported to medical providers that she had been "very active."[58] The ALJ selectively cited "active" references out of the medical records without considering their context. For instance, the ALJ discounted Plaintiff's reported symptoms because it was noted in a September 2015 treatment record that Plaintiff "also states that she is able to participate in more activity without rest and is able to tolerate 2-3 hours of activity at times."[59] Yet, the record also provides: "[patient] appeared to be more fatigued today even at beginning of session." And a month later, a medical record stated that Plaintiff had marked tenderness over the sacroiliac joints, sacral midline, moderately reduced flexion, and a non-antalgic gait.[60] Moreover, Plaintiff's lumbar conditions declined, and she had two subsequent lumbar surgeries in November 2016 and June 2017 to

---

(testifying that her camping trip involved staying in a motel room and that it resulted in her being "laid up for three days" after the trip).

[58] AR 21 (citing AR 1031 (Patient "went camping 2 times since our last visit. She didn't do very well [with her diet] during that time, but was very active")).

[59] AR 457.

[60] AR 447.

help address her degenerative disc disease at L3-4, L4-5, and L5-S1, impingement of nerve roots, neural foraminal stenosis, and severe spinal canal stenosis.[61]

The other "very active" comment in a May 2018 medical record that the ALJ relied on must be read in its context as well. Earlier that month, Plaintiff began pre-bariatric surgery preparation. To prepare for bariatric surgery, Plaintiff was recommended to increase her activity, such as by walking her dog, using a recumbent bike, and performing at home cardio four times a week and strength training three times a week, as she was able, to prepare for bariatric surgery.[62] Consistent with this recommendation, Plaintiff tried forging/blacksmithing.[63] However, Plaintiff discontinued forging because it was physically challenging on her back. Similarly, Plaintiff reported to her treatment provider that she had increased low back pain resulting from gardening on one occasion.[64] And during this pre-bariatric phase, physical therapy records indicate that Plaintiff presented:

> with limited activity tolerance, minor lower extremity strength deficits, and low back pain that impacts [her] ability to complete daily mobility tasks and prevents her from exercising with goal of weight loss . . . Will work towards patient's activity tolerance while maintaining low levels of low back pain to meet patient's goal of weight loss in preparation for bariatric surgery."[65]

---

[61] AR 502–04, 570–71, 580–81, 745–46, 946–47.

[62] AR 1023–24.

[63] AR 1039.

[64] AR 1068.

[65] AR 1030.

Moreover, after three months of approximately weekly physical therapy sessions, Plaintiff was only able to average a speed of 80 steps per minute on the Nu-step (recumbent bike with bilateral upper and lower extremities), level 1, traveling a distance of .88 miles for 20 minutes. And several months later in April 2019, a treatment note indicates that Plaintiff exhibited abnormal muscle tone in her left hip flexor and decreased range of motion in her right and left SI joints, along with tenderness.[66] Moreover, when a claimant engages in activities for therapeutic reasons, it does not necessarily mean that she can engage in similar activity for a longer period given the pain involved.[67]

The ALJ also highlighted that Plaintiff cared for her wheelchair-bound father. However, Plaintiff's "care" for her father—who was able to independently ambulate in his wheelchair, drive, and was employed as an engineer—included making dinner about three times a week.[68] There is insufficient evidence to support a finding that Plaintiff's "care" for her father, either by itself or in conjunction with her other activities, is substantial enough to constitute a clear and convincing reason to discount Plaintiff's reported symptoms.

---

[66] AR 1114.

[67] *Vertigan*, 260 F.3d at 1050.

[68] AR 48–49, 586, 1027.

In summary, in order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to articulate this finding more meaningfully. The ALJ fails to explain how substantial evidence supports his finding that the cited activities, which can be achieved in relatively short periods of time or which were attempted for only a few weeks before being discontinued due to pain, contradict Plaintiff's symptom reports.[69]

### 3.    Weak Work History

The ALJ also found Plaintiff "has a weak work history, yet with a demonstrated ability to sustain substantial gainful activity in the past."[70] Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discount a claimant's claim that she is unable to work.[71] But before discounting the claimant's reported symptoms due to a poor work history, the ALJ is to consider other factors that could have contributed to the poor work history.[72] Here, the ALJ's brief statement is not a clear and convincing reason supported by substantial evidence to discount Plaintiff's reported symptoms. The record reflects that from about 2010 to the July 2013 alleged disability date (from

---

[69] *See Molina*, 674 F.3d at 1112–13.

[70] AR 21.

[71] 20 C.F.R. §§ 404.1529, 416.929 (work record); *Thomas*, 278 F.3d at 959.

[72] *Cherry v. Apfel*, 5 Fed. App'x 500, 503 (7th Cir. 2001) (unpublished).

about the ages of 24–27), Plaintiff engaged in substantial gainful activity. Before

that, Plaintiff attended college[73] and had lumbar discectomies at the ages of 17 and

23. Given Plaintiff's college attendance and need for—and recovery from—lumbar

surgery, the ALJ's brief finding that Plaintiff had a poor work history is not a clear

and convincing reason, supported by substantial evidence, to discount Plaintiff's

symptoms.

**B.    Step Three (Listings): Plaintiff establishes consequential error.**

Plaintiff contends the ALJ erred by discounting Dr. Smiley's opinion that

Plaintiff's impairments medically equaled Listing 1.04A, and thereby finding that

Plaintiff did not satisfy Listing 1.04A, singly or in combination.

1.    Listing 1.04

Listing 1.04 applies to disorders of the spine, including degenerative disc

disease, resulting in compromise of a nerve root or the spinal cord, along with, for

purposes of Listing 1.04A:

> Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss
> (atrophy with associated muscle weakness or muscle weakness)
> accompanied by sensory or reflex loss and, if there is involvement of
> the lower back, positive straight-leg raising test (sitting and supine).[74]

---

[73] AR 248.

[74] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04. The parties agree that the 2021

revised regulations to the listings' spinal disorders do not apply. Therefore, there is

no presumption that the medical sources performed the straight-leg raising test in

If a claimant meets all of the listing criteria, she is considered disabled at step three. A claimant who does not meet the listing criteria may still be considered disabled at step three if her impairments medically equal a listed impairment.[75] Medical equivalence will be found if the medical findings are at least of equal medical significance to the required criteria.[76] Medical equivalence depends on all evidence in the record about the impairment and its effects on the claimant, except pain, age, education, and work experience are not considered.[77]

---

both sitting and supine positions. *See*

https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm (last accessed 9/17/21); *compare Yanchar v. Berryhill*, 720 Fed. App'x 367 (9th Cir. Dec. 22, 2017) (affirming ALJ's finding that claimant failed to prove both supine and sitting tests).

[75] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

[76] 20 C.F.R. §§ 404.1526(a)–(b), 404.1526(d)(3); *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990).

[77] 20 C.F.R. §§ 404.1526(b)–(c), 404.1526(d)(3).

### 2.    Dr. Smiley's Listings Opinion

Dr. Smiley reviewed the medical evidence and testified during the May 2019 administrative hearing.[78] Dr. Smiley opined that, while Plaintiff does not meet listing 1.04, she *equals* listing 1.04A because of her chronic, incapacitating pain due to her longstanding back conditions, as impacted by her obesity.

### 3.    Analytical Standard

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairments meet or equal one of the specified impairments set forth in the listings.[79] Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[80] However, the ALJ need not recite his step-three reasons in the listings portion of the decision so long as findings—and evidence relied thereon—to support the ALJ's listing decision are set forth in the entire decision.[81] Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a listing.[82]

---

[78] AR 37–45.

[79] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001).

[80] *Lewis,* 236 F.3d at 512; *Marcia,* 900 F.2d at 176.

[81] *Lewis,* 236 F.3d at 513.

[82] *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990).

4.    <u>ALJ's Findings</u>

Under the listing analysis, the ALJ stated Plaintiff's:

degenerative disc disease (lumbar) does not meet the criteria of listing 1.04, Disorders of the Spine, as there is no evidence of nerve root compression, limitation of motion of the spine, and motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight leg raising tests (sitting and supine).[83]

In other portions of his decision, the ALJ summarized various medical records discussing Plaintiff's imaging for her back with reference to whether she had tenderness, weakness, pain, or limitation of motion. The ALJ found the "longitudinal objective medical evidence to be unremarkable outside peri-operative periods (i.e., shortly before and after the claimant's two surgeries in November 2016 and June 2017). Outside these periods, the claimant has generally been found to have normal gait, strength, and sensation."[84] The ALJ also explained why he gave little weight to Dr. Smiley's opinion that Plaintiff equaled listing 1.04A, emphasizing that pain is not an adequate basis for a listings opinion.[85]

5.    <u>Analysis</u>

Plaintiff contends she equals Listing 1.04A. She relies on the following evidence, which supports most of the Listing 1.04A criteria:

---

[83] AR 19.

[84] AR 21.

[85] AR 22.

1

      1) multiple MRIs showing nerve root compression[86];

2

      2) medical records showing limited range of motion of her spine[87];

3

      3) medical records showing motor loss in the form of muscle weakness[88];

4

5

6

      ————————————————

7

8

[86] AR 361, 504, 589.

9

[87] AR 487, 450 (May 2015: lumbar and lateral flexion restricted, and decreased

10

range of lumbar motion); AR 422 (Sept. 2016: decreased lumbar motion and

11

tenderness); AR 594 (March 2017: decreased lumbar motion with extension,

12

leaning forward, and to the left); AR 587 (May 2017: lumbar flexion 7/10, lumbar

13

extension 6–7/10, side-bending decreased, and rotation at 50%); AR 589 (May 2017:

14

significant decreased lumbar motion); AR 1028 (May 2018: decreased lumbar

15

flexion, extension, and rotation); AR 1114 (April 2019: decreased lumbar motion).

16

[88] AR 487 (May 2015: reduced gluteus Medius, hip, and knee strength); AR 462

17

(Aug. 2015: reduced hip extension and external rotation strength); AR 324 (Nov.

18

2015: left foot toe movement decreased); AR 543, 547 (Nov. 2016: weakness of left

19

EHL and dorsiflexion, and plantar flexion); AR 594 (March 2017: decreased left hip

20

strength); AR 587 (May 2017: reduced strength in hips with flexion and abduction

21

and knee flexion); AR 589 (May 2017: decreased left hip strength); AR 1028 (May

22

2018: decreased gluteus and quadriceps strength); AR 1114 (April 2019: weak left

23

leg and abnormal muscle tone in left hip flexor).

4) medical records reflecting sensory and reflex loss[89]; and

5) positive straight leg raising (SLR) tests.[90]

However, Plaintiff concedes the record does not reflect that the positive SLR tests were conducted in both supine and sitting positions. Therefore, although she concedes she does not meet Listing 1.04A, she argues the ALJ erred by failing to find she equals Listing 1.04A.

Because the ALJ offered only a boilerplate Listing 1.04 denial, the Court is unable to meaningfully evaluate whether the ALJ found that Plaintiff met *some* of the Listing 1.04A criteria, or none at all. But the ALJ's findings in other portions of his opinion, namely the portion of the opinion wherein he gave little weight to Dr.

---

[89] AR 487 (May 2015: slightly diminished L S2 dermatome sensory); AR 422 (Sept. 2016: sensory deficit, left, L5 dermatome); AR 556 (Oct. 2016: sensation is slightly diminished over the left L5 dermatomal distribution slightly on the left side); AR 543 (Nov. 2016: sensation diminished left L5 and S1 distribution); AR 594 (March 2017: sensory deficit in inner left thigh, inner left calf, and outer left calf); AR 589 (May 2017: sensory deficit in the left buttock perianally).

[90] AR 487 (May 2015: bilateral SLR); AR 543, 547 (Nov. 2016: positive left-sided SLR starting at 15 degrees); AR 556 (positive SLR with ankle dorsiflexion starting at about 15 degrees and positive for back pain on the right, starting at about 75 degrees); AR 589 (May 2017: positive left SLR).

Smiley's opinion that Plaintiff equaled Listing 1.04A, allows the Court to review findings that guided the ALJ's listings denial.

The ALJ discounted Dr. Smiley's listing opinion because pain cannot serve as the basis for a listings' finding, Dr. Smiley's review of the record was not thorough, his opinion was not well-reasoned, and his opinion was inconsistent with the longitudinal record showing medical improvement and Plaintiff's activities.[91]

First, the ALJ discounted Dr. Smiley's listing 1.04A opinion because a "strictly subjective factor like pain is not adequate as the sole basis for an opinion that a claimant equals a listing."[92] The ALJ is correct: when assessing whether a listing is satisfied, a claimant's allegations of pain or other symptoms cannot replace a required sign or laboratory finding for listing criteria.[93] Accordingly, the ALJ legitimately discounted Dr. Smiley's opinion that Plaintiff equaled listing 1.04A because it was based on Dr. Smiley's determination that Plaintiff has incapacitating radiculitis pain. However, the ALJ still had a responsibility, on this record which contains evidence supporting all of the 1.04A criteria, absent

---

[91] AR 22. Dr. Smiley's listings' opinion is contradicted by the reviewing opinion of Dr. Hale, which is supported by independent evidence. AR 105–14, 121–28. For that reason, the ALJ was permitted to reject Dr. Smiley's opinion for "specific and legitimate reasons" supported by substantial evidence. *See Lester*, 81 F.3d at 830.

[92] AR 22.

[93] 20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3).

identifying whether the positive SLR tests were conducted in both the sitting and supine positions, to provide sufficient analysis to allow the Court to meaningfully review the Listing 1.04A denial. As discussed below, the Court finds the ALJ's analysis deficient, even when considering the other reasons offered by the ALJ to discount Dr. Smiley's opinion.

The ALJ also discounted Dr. Smiley's opinion because his review of the record was less thorough. Although an ALJ may give more weight to an opinion that is based on more record review and supporting evidence,[94] the ALJ failed to meaningfully explain why Dr. Smiley's review of the record was not thorough. The ALJ mentioned Dr. Smiley stated that he did not notice Plaintiff's own reports of her pain on a 10-point scale in the record, as indicated in the following hearing exchange:

> [ALJ] - Okay. You're talking about incapacitating pain. I would imagine she's reporting her pain on the ten-point pain scale in the records. Where do you see her rate that?
> [Dr. Smiley] - You know, it's funny, I didn't.

---

[94] *See* 20 C.F.R. § 404.1527(c)(6) (specifying that the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight to give that opinion); *Lingenfelter*, 504 F.3d at 1042 (recognizing the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion).

> [ALJ] - Okay. Let me move on to another issue and that's the references to some of her activities.[95]

The ALJ then found Dr. Smiley's failure to see Plaintiff's pain reports inconsistent with Exhibit 18F, which contains numerous reports of 5/10 pain or less. The Court assumes this apparent failure by Dr. Smiley to see these pain reports serves as the basis for the ALJ's finding that Dr. Smiley's review of the record was unthorough. Yet, when Dr. Smiley's testimony is viewed in its entirety, it is clear that he read Exhibit 18F. For instance, during his testimony about Plaintiff's incontinence, Dr. Smiley referenced an October 2017 medical record in Exhibit 18F, and he testified that he reviewed the physical therapy records (which contain Plaintiff's pain reports) in Exhibit 18F.[96] If the ALJ was concerned about whether Dr. Smiley had read Exhibit 18F, the ALJ should have followed-up with Dr. Smiley on this point before discounting his opinion for this reason. Moreover, in this record, there are only two physicians who opined as to Plaintiff's physical abilities: Dr. Hale, who offered his reviewing opinion in August 2017, and Dr. Smiley, who testified in May 2019. Dr. Smiley had the benefit of almost two additional years of medical records compared to Dr. Hale, who did not have an opportunity to review Exhibits 17F or 18F. On this record, the ALJ's decision to discount Dr. Smiley's opinion because his

---

[95] AR 42.

[96] *See* AR 1007–09, 1025–68.

review of the record was not thorough is not a legitimate reason supported by substantial evidence.

Third, the ALJ discounted Dr. Smiley's listing opinion because it was not well reasoned. An ALJ may permissibly reject opinions that do not offer any explanation for their limitations and are inadequately supported by medical findings.[97] Here, if the ALJ needed further explanation for Dr. Smiley's listing opinion, Dr. Smiley was available for cross-examination. Moreover, the ALJ gave more weight to Dr. Hale's reviewing opinion, which was supported with the following general statements: "evidence in file supports light RFC as above" and "[a]ll symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence [and] other evidence were determined not to rise to the level in intensity, persistence, or limiting effects which would produce workplace restrictions beyond those identified by the objective finding."[98] On this record, the ALJ's decision to discount Dr. Smiley's opinion because his opinion was not well reasoned is not a legitimate reason supported by substantial evidence.

---

[97] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[98] AR 122–24.

Fourth, the ALJ discounted Dr. Smiley's opinion because it was "inconsistent with the longitudinal record showing medical improvement with surgeries, physical therapy, and injection therapy, all of which were effective for pain."[99] Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[100] The ALJ's finding that Plaintiff's pain improved with surgeries, physical therapy, and injection therapy is supported by substantial evidence but not to the extent that these treatments were *effective for pain*. The longitudinal record reflects that, although Plaintiff's lumbar pain and limitations waned with treatment, they also continued to wax. For instance, even after Plaintiff's fourth lumbar surgery in June 2017, she experienced pain in her lower back and decreased lumbar function: *see* 1) a July 2018 physical therapy note reflects that Plaintiff had 6/10 pain to the low back and that the therapist would "continue to progress activity; however, barriers may exist, including chronic pain to back and knees,"[101] and 2) an April 2019 treatment note reflects that she had decreased range of lumbar motion and tenderness in her right and left SI joints, she exhibited abnormal muscle tone in her left hip flexor, and a weak left leg.[102] On

---

[99] AR 22.

[100] *See Lingenfelter*, 504 F.3d at 1042.

[101] AR 1058.

[102] AR 1114. *See also* AR 1025-29 (May 2018: testing reflects that Plaintiff (in her young 30s) was able to perform 13 "stands" in 30 seconds, consistent with a women

this record, the ALJ's decision to discount Dr. Smiley's opinion because the longitudinal record showed medical improvement with treatment is not a legitimate reason supported by substantial evidence because the evidence as a whole reflects that Plaintiff's pain and limitations continued to wax. The ALJ's analysis fails to reflect that he considered the complete diagnostic picture.[103]

Finally, the ALJ discounted Dr. Smiley's opinion because it was inconsistent with Plaintiff's activity level that included camping, gardening, assisting her wheelchair-bound father, and forging. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity or if claimant's activities are easily transferable to the workplace environment, while recognizing that "many home activities are not easily transferable to what may be the more grueling

---

who was 60-64 years old, and that she walked 481.9 meters in 6 minutes, consistent with a woman in her late 60s); AR 1066 (Aug. 2018: "[L]imited activity tolerance, minor lower extremity strength deficits, and low back pain that prevents her from exercising with goal of weight loss."); AR 1085-92 (Jan. 2019: noting that Plaintiff was distractible, depressed, anxious, frustrated, and tearful).

[103] *See Ghanim*, 763 F.3d at 1164 (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant*, 753 F.2d at 1456 (disallowing the ALJ from cherry-picking evidence to support a conclusion that contradicts the overall diagnostic record).

1

2

3

4

5

6

environment of the workplace."[104] As discussed above, camping, gardening, and forging caused Plaintiff pain, reduced range of motion, tenderness, and/or fatigue, causing Plaintiff to cease these activities. And Plaintiff's care of her father merely involved cooking dinner three times a week. The ALJ's decision to discount Dr. Smiley's opinion because it was inconsistent with Plaintiff's activities is not a legitimate reason supported by substantial evidence.

7

      6.   Conclusion

8

9

10

11

12

13

14

All but one of the ALJ's reasons for discounting Dr. Smiley's listings' opinion are not legitimate reasons supported by substantial evidence. Although it was legitimate for the ALJ to discount Dr. Smiley's listings opinion because it could not be based simply on Plaintiff's pain, this record contains medical evidence that Plaintiff had degenerative disc disease, which compromised a nerve root that caused neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight leg raising tests.[105]

15

16

17

18

19

20

21

22

23

[104] *Rollins*, 261 F.3d at 856; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[105] *See also* AR 570, 746 (Nov. 2016: lumbar radiculopathy); AR 603 (Dec. 2016: same); AR 870 (Nov. 2017: "[P]rimary incapacitating pain complaint of low back pain whose history of present illness and physical exam is consistent with Lumbar Radiculopathy as their primary pain generator. Review of recent imaging correlates with these diagnoses.").

Because the ALJ failed to meaningfully articulate why Plaintiff did not medically equal Listing 1.04A, the ALJ erred.

This error is consequential. On remand, the ALJ must meaningfully explain the basis for his listing decision.

**C.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by giving little weight to Dr. Smiley's opinion that Plaintiff was unable to sustain even sedentary work.

1.    Standard[106]

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., whether the medical provider is a treating physician, an examining physician, or a reviewing physician.[107] Generally, more weight is given to the opinion of a treating physician than to the opinion of an examining physician, and the opinions of both treating and examining physicians are given more weight than the opinion of a reviewing physician.[108]

---

[106] 20 C.F.R. §§ 404.1520c, 416.920c. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (2017).

[107] *Garrison*, 759 F.3d at 1012.

[108] *Id.*; *Lester*, 81 F.3d at 830–31.

1

2.    Dr. Smiley

2

As mentioned above, Dr. Smiley reviewed the medical evidence and testified

3

during the administrative hearing.[109] In addition to opining that Plaintiff equaled

4

listing 1.04A, Dr. Smiley opined that Plaintiff cannot "function in the workplace on

5

a regular basis" at even a sedentary level.[110]

6

Dr. Smiley's opinion is contradicted by the reviewing opinion of Dr. Hale,

7

which is supported by independent evidence.[111] For that reason, the ALJ was

8

permitted to reject Dr. Smiley's opinion for "specific and legitimate reasons"

9

supported by substantial evidence.[112]

10

The ALJ discounted Dr. Smiley's listing opinion for the reasons explained

11

above; however, the ALJ did not separately articulate why he discounted Dr.

12

Smiley's opinion that Plaintiff could not sustain full time work. Although the ALJ

13

properly discounted Dr. Smiley's *listing* opinion because pain alone is not an

14

adequate basis for equaling a listing, chronic pain must be considered by the ALJ

15

16

17

18

19

[109] AR 37–45.

20

[110] AR 41–42.

21

[111] AR 105–14, 121–28.

22

[112] *Lester*, 81 F.3d at 830.

23

when assessing a claimant's RFC for sustained, full-time work at step five.[113]

Therefore, by not addressing Dr. Smiley's opinion that Plaintiff could not sustain

full-time work, the ALJ erred at step five.

**D.     Remand: further proceedings are needed.**

Plaintiff submits a remand for payment of benefits is warranted because Dr.

Smiley opined that she equaled a listing.

The decision whether to remand a case for additional evidence, or simply to

award benefits, is within the Court's discretion.[114] Remand for further proceedings

is the usual course, absent clear evidence from the record that a claimant is

entitled to benefits.[115] For instance, where "there are outstanding issues that must

be resolved before a determination can be made, or if further administrative

proceedings would be useful, a remand is necessary."[116]

---

[113] 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also Lester*, 81 F.3d at 829–30 (requiring

the ALJ to consider the impact of the claimant's chronic pain when assessing the

claimant's residual functional capacity).

[114] *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v.*

*Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[115] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379

F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is

to remand to the agency for additional investigation or explanation.").

[116] *Leon*, 880 F.3d at 1047.

Remand is necessary because disability is not clearly established. The ALJ's decision to discount Dr. Smiley's listing opinion is supported by substantial evidence because Dr. Smiley's equivalency opinion was based on Plaintiff's pain. Further proceedings are necessary to consider whether Plaintiff equals Listing 1.04A and, if not, whether Plaintiff can sustain full-time work.

On remand, the ALJ is to order a physical consultative examination to assess Plaintiff's sustained RFC. The consultative examiner must be given sufficient medical records to allow for a longitudinal perspective.[117] The ALJ is to then reconsider the medical evidence, Plaintiff's symptom reports, and reevaluate the sequential process.

On remand, if the ALJ again discounts Plaintiff's symptoms, the ALJ must articulate clear and convincing reasons for doing so.[118] General findings are insufficient because the Court cannot affirm discounting Plaintiff's symptoms for a reason not articulated by the ALJ.[119] The ALJ must identify what symptoms are being discounted and what evidence undermines these symptoms.[120]

---

[117] Because a consultative examination is ordered, the consultative examiner is to append the records that the examiner reviewed to the report, or at a minimum clearly identify the records reviewed.

[118] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[119] *See Garrison*, 759 F.3d at 1010.

[120] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 35

1

### V.    Conclusion

2

Accordingly, **IT IS HEREBY ORDERED**:

3

1.    The case caption is to be **AMENDED** consistent with footnote 2.

4

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is

5

**GRANTED**.

6

3.    The Commissioner's Motion for Summary Judgment, **ECF No. 20**, is

7

**DENIED**.

8

4.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

9

REVERSING and REMANDING the matter to the Commissioner of

10

Social Security for further proceedings pursuant to sentence four of 42

11

U.S.C. § 405(g).

12

5.    The case shall be **CLOSED**.

13

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

14

provide copies to all counsel.

15

**DATED** this 20th day of October 2021.

16

17

EDWARD F. SHEA
Senior United States District Judge

18

19

20

21

22

23